# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AIMEE MAE AUSTIN, | ) Case No. 1:19-cv-2380 |
| Plaintiff, | ) Judge J. Philip Calabrese |
| v. | ) Magistrate Judge Thomas M. Parker |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Aimee Mae Austin objects (ECF No. 18) to the Magistrate Judge's Report and Recommendation (ECF No. 17). For the reasons that follow, the Court **OVERRULES** her objections, **ADOPTS** the Report and Recommendation, and **AFFIRMS** the Commissioner's decision denying Ms. Austin's application for supplemental security income ("SSI").

## STATEMENT OF FACTS

On September 27, 2016, Ms. Austin applied for SSI claiming a disability due to borderline personality disorder, severe anxiety, severe depression, ulcers, spastic colon, irritable bowel syndrome, GERD, acid reflux, lordosis, and scoliosis. (ECF No. 10, PageID #465.) The Commissioner denied her application both initially and on reconsideration. (*Id.*, PageID #381–83, 406–07.) Ms. Austin requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*, PageID #410.) The ALJ also found Ms. Austin was not disabled, as defined by the Social Security Act. (*Id.*, PageID

1

#207.) The Appeals Council denied further review, rendering the ALJ's decision final. (*Id.*, PageID #58.) Plaintiff appealed that decision to the District Court where the Magistrate Judge considered the case and made his Report and Recommendation. The Magistrate Judge recommends the Court affirm the Commissioner's final decision denying Ms. Austin's application for SSI. (ECF No. 17, PageID #1130.) Plaintiff timely objected to the Report and Recommendation. (ECF No. 18.)

### A. Evidence Regarding Ms. Austin's Need for a Cane

Ms. Austin began using a cane in February 2017 after attending physical therapy. (ECF No. 10, PageID #627.) Her primary care physician referred Ms. Austin to a physical therapist after she shared an eight-year history of back pain following a motor vehicle accident. (*Id.*, PageID #567.) Following the accident, she explained that the pain in her back worsened and reached a point where standard pain medication no longer helped. (*Id.*) Only after the hospital prescribed her opiates—valium and tramadol—did the pain become manageable. (*Id.*) Loretta Vojtko, PT, MPT evaluated Ms. Austin for physical therapy. (*Id.*, PageID #628.) Ms. Austin told Vojtko that she suffered from scoliosis, although she did not need a brace. (*Id.*, PageID #627.) But she did need help walking and sitting down. (*Id.*) She also reported falls due to dizziness and not having the strength to fully lift her feet causing her to trip as she walked. (*Id.*)

After examination, Vojtko diagnosed Ms. Austin with lower back pain. (*Id.*, PageID #628.) She noted no observable malalignments, scoliosis, or loss of lumbar lordosis. (*Id.*) Vojtko advised Ms. Austin to use a cane to assist with ambulation if

she felt unsteady. (*Id.*) She also set a goal for Ms. Austin to use a cane if unable to walk independently. (*Id.*) From then on, Ms. Austin arrived at therapy with a cane. (*Id.*, PageID #613, 615, 617, 619, 623.) Vojtko noted that Ms. Austin did not show signs of significant improvement and opined that the frequency of pain, uncertainty of its cause, and Ms. Austin's psychological issues were barriers to her physical recovery. (*Id.*, PageID #617.)

That March, Ms. Austin began seeing a pain management specialist, Joshua Goldner, M.D., for her pain. (*Id.*, PageID #650–62.) She reported a long history of widespread body pain. (*Id.*, PageID #653.) When she arrived at Dr. Goldner's office, Ms. Austin was using a cane and had an abnormal gait. (*Id.*) Dr. Goldner diagnosed Ms. Austin with fibromyalgia and chronic pain syndrome. (*Id.*, PageID #654.) He prescribed Gabapentin for pain management and recommended Ms. Austin see a rheumatologist. (*Id.*, PageID #653.)

After a few months of treating with Dr. Goldner, in May 2017 Ms. Austin began seeing Michael Louwers, M.D., another pain management specialist. (*Id.*, PageID #732–36.) Ms. Austin explained that previous treatment for her pain did not help and she was now in so much pain she needed to use a wheelchair. (*Id.*, PageID #732.) Dr. Louwers noted that Ms. Austin's pain was consistent with fibromyalgia, but he suggested lab work to rule out autoimmune diseases. (*Id.*, PageID #735.) Also, he noted there was no indication Ms. Austin needed a cane or other walking aid. (*Id.*) During a follow-up appointment, Dr. Louwers diagnosed Ms. Austin with myalgia, fibromyalgia, and chronic pain syndrome, which was consistent with Dr. Goldner's

3

findings. (*Id.*, PageID #653, 729.) Dr. Louwers prescribed Lyrica and Nabumetone for pain management. (*Id.*, PageID #730.) Dr. Louwers still saw no need for a cane or other walking aid. (*Id.*, PageID #731.)

In follow-up appointments with Dr. Louwers's office, Ms. Austin walked using a cane, and nurses who saw her noted no significant improvement. (*Id.*, PageID #722, 726.) As of April 2018, Ms. Austin continued to see Dr. Louwers, as her condition had not improved. (*Id.*, PageID #809–14.) The doctor noted Ms. Austin still did not need a cane or other walking aid. (*Id.*)

### B. The Hearing Before the ALJ

At a hearing before the ALJ, Plaintiff presented medical and non-medical evidence for the record in support of her having a disability. She and several experts testified; however, after considering all the evidence, the ALJ found Ms. Austin was not disabled, as defined by the Social Security Act. (ECF No. 10, PageID #207.)

#### B.1. Vocational Expert

During Ms. Austin's hearing before the ALJ, vocational expert Kevin Yi testified that an individual with Ms. Austin's age, education, job history, and other limitations would be able to find jobs at the sedentary unskilled level. (*Id.*, PageID #341.) Yi provided examples of the jobs such a person would be able to perform. (*Id.*, PageID #341–42.) For example, sedentary unskilled positions include charge account clerk, which has 80,000 jobs available nationwide, laboratory tester, which has 12,000 jobs available nationwide, or final assembler, which has 25,000 jobs available nationwide. (*Id.*, PageID #342.)

4

When asked about the additional limitation of a cane, Yi testified that "[u]sing a cane does not affect the job performance in general for the sedentary exertion level job; however, for unskilled jobs normally there will be, requires [sic] the employer's accommodation." (*Id.*, PageID #341.) Following up on this testimony, the ALJ asked Yi whether the jobs listed—charge account clerk, laboratory tester, and final assembler—would be "available in those numbers without accommodation." (*Id.*, PageID #342.) Yi explained there would be "no change" in the number of jobs available if the limitation of using a cane was added. (*Id.*) He clarified that "[i]n general" using a cane "will not affect the job performance because sedentary jobs . . . require[] at least six hours . . . in the sitting position." (*Id.*, PageID #343.) Yi concluded by explaining that at an unskilled level a cane "could be an issue" for "the employer, so ask[ing] for permission to use [the cane] to come and go into the work setting" would be the accommodation. (*Id.*)

### B.2. The ALJ's Analysis

After considering the evidence presented, including Yi's testimony, the ALJ conducted the five-step analysis set forth in 20 C.F.R § 404.1520(a)(4) and determined Ms. Austin was not disabled. (ECF No. 10, PageID #193–207.) First, the ALJ found Ms. Austin had not engaged in gainful employment since September 17, 2016. (*Id.*, PageID #195–96.) Second, the ALJ determined Ms. Austin had the following severe impairments: obesity, lumbar impairments, degenerative disc disease, fibromyalgia, asthma, depressive disorder, dysthymic disorder, bipolar disorder, anxiety, schizoaffective disorder, psychosis, borderline personality disorder,

5

and post-traumatic stress disorder. (*Id.*, PageID #196–97.) The ALJ stated these severe impairments "significantly limit [Ms. Austin's] ability to perform basic work activities." (*Id.*, PageID #197.) Third, the ALJ determined none of these impairments met the criteria for Ms. Austin to be presumed disabled without further inquiry. (*Id.*, PageID #197–99.)

Before proceeding to the fourth step, the ALJ found Ms. Austin had the residual functional capacity to perform light work with some limitations. (*Id.*, PageID #199–206.) In considering Ms. Austin's physical symptoms, the ALJ found Ms. Austin was limited to "never climb[ing] ladders, ropes or scaffolds and must never be "expos[ed] to workplace hazards, such as unprotected heights." (*Id.*, PageID #199.) Discussing Ms. Austin's physical impairments, the ALJ was silent on Ms. Austin's evidence regarding her need for a cane. (*See generally*, *id.*, PageID #193–207.)

Considering Ms. Austin's psychological symptoms, the ALJ found that, although the record was consistent with her claims of anxiety, depression, and hallucinations, her impairments were "not as severe as alleged" and the record as a whole did not support the contention that these symptoms precluded all types of work. (*Id.*, PageID #203.) The ALJ noted Ms. Austin was making progress through her regularly scheduled counseling and current treatment. (*Id.*)

Summarizing the record, the ALJ cited three mental health examinations to show Ms. Austin consistently experienced either mildly adverse or normal symptoms. (*Id.*) First, a medical report from March 21, 2017, indicated Ms. Austin expressed anger, depression, suicidal ideations, and atypical hallucinations, but also had an

6

appropriate appearance, demeanor, thought process, memory, and concentration. (*Id.*) Second, a report dated November 22, 2017, showed Ms. Austin presented with restless psychomotor activity, an irritable mood, and auditory hallucinations; however, Ms. Austin had an appropriate appearance and demeanor, constituted no danger to herself or others, and had good concentration during that appointment. (*Id.*) Third, on June 4, 2018, Alternative Paths reported that Ms. Austin exhibited auditory hallucinations and a depressed mood, but also made eye contact, had a coherent and logical thought process, had age-appropriate attention and concentration, and expressed no suicidal or homicidal ideation. (*Id.*)

In light of these psychological symptoms, the ALJ determined Ms. Austin could function in a work environment so long as she was limited to "simple, routine, repetitive tasks, undertaken in a work setting free of production rate pace," where the work "setting is routine" and "contemplates no more than occasional changes in workplace tasks or duties." (*Id.*, PageID #203.) The ALJ found the work should be "easily explained" or "demonstrated in advance of gradual integration into the job's processes" and the work setting must not require "more than occasional and superficial . . . interaction with co-workers, supervisors, or the public." (*Id.*, PageID #203–04.)

Moving to step four, the ALJ determined Ms. Austin had no past relevant work. (*Id.*, PageID #206.) Finally, at the fifth step, the ALJ found Ms. Austin could perform jobs that existed in significant numbers in the national economy. (*Id.*) In making this determination, the ALJ considered the testimony of Yi regarding an individual

with Ms. Austin's residual functional capacity. (*Id.*, PageID #206–07.) Possible jobs included housekeeper, merchandise marker, and mail clerk. (*Id.*, PageID #207.) Therefore, the ALJ concluded Ms. Austin was not disabled, as defined by the Social Security Act. (*Id.*)

### C. The Report and Recommendation

Ms. Austin appealed. After considering the record before him, the Magistrate Judge now recommends the Court affirm the ALJ's determination. (ECF No. 17, PageID #1130.) Ms. Austin timely objected to the Magistrate Judge's Report and Recommendation, raising three issues: (1) the Magistrate Judge incorrectly concluded the omission of Ms. Austin's cane was a harmless error; (2) a physician's opinion must support a determination of residual functional capacity; and (3) the Magistrate Judge incorrectly found the ALJ did not have to consider all of the evidence on the record regarding Ms. Austin's psychological symptoms. (ECF No. 18, PageID #1158–61.)

## STANDARD OF REVIEW

When reviewing a report and recommendation, the Court conducts a de novo review of the portions to which there are objections. 28 U.S.C. § 636(b); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Thomas v. Arn*, 474 U.S. 140, 147 (1985) ("The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the

heart of the parties' dispute."). A "general objection" that does nothing more than restate an argument previously presented or simply states a disagreement with a magistrate judge's suggested resolution "has the same effects as would a failure to object." *Howard*, 932 F.2d at 509.

De novo review requires the Court to re-examine the relevant evidence a magistrate judge previously reviewed to determine whether to accept, reject, or modify the report and recommendation. 28 U.S.C. § 636(b). Where a plaintiff properly objects, review of an ALJ's decision is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see* 42 U.S.C. § 405(g). Substantial evidence is greater than a mere scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence would lead a reasonable mind to accept the evidence of record as adequate to support a conclusion. *Id.* at 241. Where substantial evidence supports the Commissioner's decision, it must be affirmed— even if the Court might have resolved the question differently. *Id.*

## ANALYSIS

Plaintiff asserts three objections to the Report and Recommendation, each of which the Court addresses in turn.

### I. Omission of the Cane

Plaintiff objects to the Report and Recommendation on the basis that the Magistrate Judge determined the omission of Ms. Austin's use of a cane was a harmless error. ([ECF No. 18](), PageID #1158.) Generally, if the ALJ errored by failing

9

to apply the proper legal standards, the Court will not uphold that decision *unless* the legal error is harmless. *See Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). An error that does not "affect the substantial rights of the parties" is harmless. 28 U.S.C. § 2111.

Here, Plaintiff must show the ALJ's finding—a significant number of jobs are available in the national economy and Ms. Austin could perform them—would have been different if the error had not occurred, *i.e.*, if the ALJ had accounted for the cane. *See Wilson*, 378 F.3d at 546–47 (explaining that a "violation of . . . procedural rules will not result in reversible error absent a showing the claimant has been prejudiced on the merits or deprived of substantial rights") (quoting *Connor v. United States Civ. Serv. Comm'n*, 721 F.2d 1054, 156 (6th Cir. 1983)) (emphasis omitted).

### I.A. Error

The Magistrate Judge determined the ALJ erred by not mentioning Ms. Austin's use of a cane and failing to explain why the cane was excluded from determination of her residual functional capacity. (ECF No. 17, PageID #1154.) Ms. Austin reported significant back pain as well as the need for a cane. (ECF No. 10, PageID #329–331.) Additionally, the evidence showed that since 2017 Ms. Austin regularly used a cane to help her walk. (*Id.*, PageID #331.) The Court agrees that it was an error for the ALJ not to explain the omission of the cane when determining Ms. Austin's residual functional capacity.

10

**I.B. Harmless Error**

Nonetheless, the Magistrate Judge determined that exclusion of the cane limitation was harmless because the evidence as a whole showed a significant number of jobs Ms. Austin could perform even with the limitation added. (ECF No. 17, PageID #1155–57.) Further, the Magistrate Judge found Plaintiff could not show her residual functional capacity would change with inclusion of the cane. (*Id.*, PageID #1156.)

Plaintiff argues the addition of the cane changes the number of jobs she can perform, making the error not harmless. (ECF No. 18, PageID #1158.) To support this argument, Plaintiff correctly notes Yi's testimony that "[u]sing a cane does not affect the job performance in general for the sedentary exertional level jobs; however, for unskilled jobs normally there will be, requires [sic] the employer's accommodation." (ECF No. 10, PageID #341.) Based on this testimony, Plaintiff argues that the number of jobs Yi identified for a person with Ms. Austin's residual functional capacity at a sedentary unskilled level would not be available without an accommodation for a cane. (ECF No. 18, PageID #1158–59.) On this basis, Plaintiff argues the error is not harmless. (*Id.*, PageID #1158.) But the record shows that Yi testified the number of jobs he identified were "available in those numbers" with or "without accommodation." (ECF No. 10, PageID #342.) In his opinion, "there'd be no change for using a cane." (*Id.*) He explained that the accommodation would be limited to "com[ing] and go[ing] to the work setting" and would "not affect the job

11

performance because sedentary jobs are . . . perform[ed] . . . in the sitting position." (*Id.*, PageID #343.)

Courts within the Sixth Circuit hold that an ALJ's failure to include a cane limitation in assessment of residual functional capacity can amount to harmless error. *See, e.g.*, *Sutton v. Berryhill*, No. 1:17-cv-233, 2017 WL 6568183, at *19 (N.D. Ohio Dec. 8, 2017) (explaining that failure to include the cane limitation was a harmless error because "even if the ALJ did add the limitation of a cane . . . the result would essentially be the same"), *adopted sub nom*, *Sutton v. Commissioner of Soc. Sec.*, No. 1:17-cv-233, 2017 WL 6558165, at *1 (N.D. Ohio Dec. 22, 2017); *Lowery v. Commissioner of Soc. Sec.*, No. 17-12348, 2018 WL 3041201, at *15 n.1 (E.D. Mich. May 29, 2018) ("[E]ven if the ALJ had erred in failing to incorporate [the plaintiff's] use of a cane into her findings, any such error is harmless where a [vocational expert] testified that 60,000 sorter jobs could still be performed by a hypothetical individual with such restrictions."), *adopted*, 2018 WL 3036320, at *1 (E.D. Mich. June 19, 2018); *see also* ECF No. 17, Page ID #1155 (collecting cases).

Here, the Court determines that the ALJ's exclusion of the cane limitation is a harmless error. Yi's testimony establishes there are a significant number of jobs Ms. Austin can perform—account clerk (80,000 jobs available), laboratory tester (12,000 jobs available), or final assembler (25,000 jobs available). (ECF No. 10, PageID #342.) Further, his testimony indicates that the numbers of these jobs that Ms. Austin could perform at a sedentary unskilled level would not change materially with a cane limitation. (*Id.*, PageID #343.) Even just 6,000 jobs in the national

economy constitutes a "significant number." *Taskila v. Commissioner of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (holding that 6,000 jobs in the national economy constitutes a significant number). Accordingly, because the record contains substantial evidence of the availability of a significant number of jobs, the ALJ's error was harmless, and the Court overrules Plaintiff's first objection.

## II.     Opinion on Residual Functional Capacity

Plaintiff objects that the Report and Recommendation did not require support from a physician to establish residual functional capacity. (ECF No. 18, PageID #1159). Courts consistently hold that it is an "error for the ALJ to formulate [residual functional capacity] without the benefit of *any opinion* evidence." *Gentry v. Commissioner of Soc. Sec.*, No. 1:17-cv-1182, 2018 WL 4305213, at *4 (N.D. Ohio, Sept. 10, 2018) (quoting *Gross v. Commissioner of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017)). Against this background, Plaintiff objects that substantial evidence of residual functional capacity requires a medical opinion. But the Sixth Circuit requires only substantial evidence, not the opinion of a physician, when determining residual functional capacity. *See Rudd v. Commissioner of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013) (finding substantial evidence where the ALJ "properly based her [residual functional capacity] determination on all the evidence of record"). "[T]o require the ALJ to base her [residual functional capacity] finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination . . . that an individual is disabled," rather than

13

the Commissioner or the ALJ. *Id.* at 728 (quotations omitted); *see also* ECF No. 17, PageID #1148 (collecting cases).

Here, the record shows that, in making a determination of residual functional capacity, the ALJ considered the record as a whole, including the opinions of psychological consultant David Dietz, Ph.D., psychological consultant Kristin Haskins, Psy.D., and psychological examiner E. M. Bard, Ph.D. (ECF No. 10, PageID #205–06.) Indeed, the ALJ found Ms. Austin was more limited than Dr. Bard and Dr. Dietz opined. Plaintiff's argument requiring a medical opinion to support the ALJ's determination of residual functional capacity contravenes the law of this Circuit. Because substantial evidence supports the ALJ's determination, the Court overrules Plaintiff's second objection.

### III.  Psychological Symptoms

Finally, Plaintiff objects that the Magistrate Judge incorrectly found the ALJ was not required to summarize all the treatment notes. (ECF No. 18, PageID #1159.) In support of her argument, Plaintiff maintains an ALJ must summarize all treatment notes if the ALJ has not "considered the evidence as a whole and reached a reasoned conclusion." (*Id.*) Then, Plaintiff cites most of the record discussing hallucinations and psychological symptoms. (*Id.*, PageID #1160). Based on the record, she argues in effect that the record generally does not support the ALJ's findings. (*Id.*)

This objection does nothing more than disagree with the ALJ's interpretation. Plaintiff fails to explain how the record shows her psychological symptoms would change the ALJ's findings or prevent Ms. Austin from performing work. As the

14

Magistrate Judge recognized, "[Plaintiff]'s desire that the ALJ should have interpreted the evidence differently does not mean that [the ALJ's] decision lacked the support of substantial evidence." (ECF No. 17, PageID #1151.) Accordingly, Plaintiff fails to object with sufficient specificity to preserve the issue. *See Howard*, 932 F.2d at 509.

Considering the merits of the objection nonetheless, an ALJ is not required to summarize all treatment notes when making its decision. "While it may be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 507–08 (6th Cir. 2006) (quoting *Loral Def. Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)). Rather, the ALJ must consider the record as a whole. *Boseley v. Commissioner of Soc. Sec.*, 397 F. Appx. 195, 199 (6th Cir. 2010).

Here, the record shows the ALJ did that. The ALJ cited and discussed three mental health examinations: (1) a report from March 21, 2017, which indicated Ms. Austin expressed anger, depression, suicidal ideations, and atypical hallucinations; (2) a record dated November 22, 2017, showed Ms. Austin had with restless psychomotor activity, an irritable mood, and auditory hallucinations but was not a danger to herself or others; and (3) an examination on June 4, 2018 that included discussion of hallucinations. (ECF No. 10, PageID #203.) The ALJ used these examinations to illustrate the psychological symptoms shown in the record;

15

they were not exhaustive. (*Id*.) These examinations and the record as a whole support the ALJ's determinations. Therefore, the Report and Recommendation correctly determined the ALJ considered the totality of the evidence in making his findings regarding the psychological symptoms, and the Court overrules this objection as well.

## CONCLUSION

For the foregoing reasons, the Court **OVERULES** Plaintiff's objections (ECF No. 18), **ADOPTS** the Report and Recommendation of the Magistrate Judge (ECF No. 17), and **AFFIRMS** the decision of the Commissioner of Social Security to deny Ms. Austin's application for SSI.

**SO ORDERED.**

Dated: April 19, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio